## BLACKWELL v. GUARANTY STATE BANK OF KELLER.    (No. 7133.)

(Court of Civil Appeals of Texas.    San Antonio.    April 2, 1924.)

**I. Courts ⬥169(2)—Petition on notes and to foreclose chattel mortgage held within county court's jurisdiction.**

On petition to recover on notes aggregating $500 and to foreclose a chattel mortgage on personal property in which the value of the mortgaged property was not specifically alleged, there was no error in refusing to dismiss the case because it exceeded the jurisdiction of the county court under Const. art. 5, § 16, where the amount sued for on the obligation was within the court's jurisdiction and the value of the security in controversy did not exceed the court's jurisdiction.

**2. Courts ⬥170—Value of security sued on should be shown by defensive pleading.**

The value of the obligation sued on should on the face of the pleading determine the county court's jurisdiction, and if the value of securities exceeds the value of the face of the obligation, to take it out of the jurisdiction of the court, such question should appear by proper defensive pleading.

Appeal from Tarrant County Court; H. O. Gossett, Judge.

Suit by the Guaranty State Bank of Keller against L. J. Blackwell, in which H. M. Ash intervened. From judgment rendered, defendant appeals. Affirmed.

J. A. Templeton, of Fort Worth, for appellant.

E. S. Allen and W. L. Coley, both of Fort Worth, for appellee.

COBBS, J. Appellee instituted this suit in the county court of Tarrant county against appellant to recover judgment on three several promissory notes aggregating $500, and also sought to foreclose a chattel mortgage on certain personal property. In none of appellee's pleadings was the value of the mortgaged property specifically alleged. However, the pleading contained a copy of the mortgage, which it sought to foreclose, and which described the property, giving its value as follows:

"20 acres of cotton on H. M. Ash farm, 1922 crop, 1 gray mare, 9 years old, her increase, 14½ hands high, 1 mule colt, 1 year old, 3 Jersey cows, 6 years old, their increase, 2 wagons, Studebaker and Watson, of the value of the sum of six hundred forty dollars."

Appellant filed a general denial and special answer admitting the execution of the three notes, and pleaded a renewal and extension of the $220 note. He also set up a cross-action against appellee for the wrongful suing out of the attachment upon which he took a nonsuit; but in such cross-action he alleged that the four bales of cotton levied on were "of the value of, to wit, about $475.00." And again in said cross-action says he "has thus sustained actual damages because of such illegal and wrongful suing out of said writ of attachment and the seizure of said property in the sum of, to wit, $500.00, for which he sues as actual damages."

H. M. Ash intervened in said suit, alleging appellant became indebted to him in the sum of $2,000, secured by a chattel mortgage on 30 acres of cotton and other property, alleging an agreement to cancel a portion of said indebtedness on the condition that appellant pay intervener $500. And alleging further that the $200 note executed by appellant to intervener's wife was assigned to him.

Appellee sued out a writ of attachment on the 23d day of October, 1922, which was levied on four bales of cotton belonging to the appellant. Appellant on January 10, 1923, filed motion to quash the writ of attachment, which motion was granted. Appellee immediately sued out another writ of attachment which was executed by levying on the same four bales of cotton. Plaintiff's original writ of attachment, defendant's motion to quash, and plaintiff's second writ of attachment are not shown in the transcript. Appellee has filed a motion in this court requesting that plaintiff's second writ of attachment be made a part of the record of this cause in this court.

Neither party paged their briefs, as they should have done, which makes them a little unhandy for quick reference.

The case was submitted to the court without a jury, and the court made the following findings and conclusions of law:

"First, that the total amount due from appellant was $508.24.

"Third, that the property described in said note is as follows: '20 acres of cotton on the H. M. Ash farm, 1922 crop; one gray mare, nine years old, her increase (11 hands high); one mule colt, one year old; three Jersey cows, six years old. their increase; 2 wagons, Studebaker and Watson.' * * *

"Sixth, that the instrument in writing, executed by L. J. Blackwell, in form a mortgage, and purporting to secure said notes, while bearing no date, was executed contemporaneously with the two notes last above mentioned, dated November 1, 1921, but in fact executed on or about March 29, 1922, and filed for record on March 29, 1922; that said mortgage, among other things, refers to 30 acres of cotton to be grown on the H. M. Ash farm, but does not define any particular 30 acres of cotton nor fix the year in which such cotton was to be raised."

"The court sustains findings 'first,' 'third,' and 'sixth,' as requested by the plaintiff, and finds as a fact in lieu of 'second,' requested by plaintiff, as follows:

"Second, note above referred to dated December 22, 1921, had attached thereto a chattel mortgage given by defendant to plaintiff securing not only the $220 (two hundred twenty

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

and no/100) dollars recited in said note, but also such other sums of money which the said L. J. Blackwell might then owe or thereafter owe the First State Bank of Keller, Tex., or its assigns prior to the payment of the above-described $220 (two hundred twenty and no/100) dollar note, and that by reason of the terms of said note and mortgage the said two hundred twenty and no/100 ($220.00) dollar note and the balance due on the $152.76 (one hundred fifty-two and 76/100)·dollar note, dated July 5, 1922, and due October 1, 1922, were secured thereby, but that note for $191.83, dated May 24, 1922, due October 1, 1922, given to the Carter Grocer Company, did not become secured by said mortgage.

"The court further finds in lieu of finding 'fifth,' requested by plaintiff, as follows:

"Fifth, that the defendant L. J. Blackwell was at and prior to the time of filing this suit, and now is ·indebted to the intervener, H. M. Ash, in the sum of $700 and that the balance of the original indebtedness from L. J. Blackwell to intervener, H. M. Ash, viz. $1,837.70, had been canceled by agreement between the defendant, L. J. Blackwell, and the intervener, H. M. Ash, prior to the filing of this suit, leaving but $500 of said $1,837.70 due from defendant L. J. Blackwell to intervener, H. M. Ash. The remaining $200 being due upon a separate note given by defendant, L. J. Blackwell, to Mrs. H. M. Ash, October 11, 1921, and by her indorsed to intervener, H. M. Ash. That the two notes evidencing the original indebtedness of the $1,837.70 above referred to, while dated November 1, 1921, were not in fact signed until some time after January 21, 1922, the exact date of which is not shown by the evidence.

"And the court finds in lieu of 'sixth,' requested by plaintiff, as follows:

"Sixth, that the instrument in writing executed by L. J. Blackwell, in form a chattel mortgage, and purporting to secure said two notes aggregating $1,837.70, while bearing no date, was executed contemporaneously with said two notes dated November 1, 1921, but in fact executed some time after January 21, 1922, the exact date of which is not shown by the evidence, and that said instrument was received and filed for registration March 29, 1922, that said mortgage among other things refers to 30 acres of cotton to be grown on the H. M. Ash farm, but does. not define any particular 30 acres of cotton nor fix the year in which such cotton was to be raised.

"The court finds on his own motion that intervener, H. M. Ash, is entitled to a decree of foreclosure of the chattel mortgage given him by L. J. Blackwell, except as to the 30 acres of cotton therein referred to; that all the remaining property therein mentioned should be sold, or so much as necessary, and the proceeds thereof applied to the payment of the balance due from the said L. J. Blackwell to said H. M. Ash, intervener, on the $1,837.70 notes mentioned in said mortgage, said balance being $500.

"The court further finds, on his own motion, that the various notes offered in evidence in this case should be marshaled as follows:

"First, plaintiff's note, viz. for $220, dated December 22, 1921, due October 1, 1922, total due on said note $267.47, and plaintiff's note for $152.76, dated July 5, 1922, due October 1, 1922, balance due thereon $7.20, should first be paid out of the proceeds of the cotton held under the writ of attachment levied in this case, viz. 4 bales of cotton now in possession of the officers.

"Second, that any balance remaining unpaid of the $500 referred to in No. 111, above, should next be paid out of any moneys derived from the sale of the cotton above referred to after the payment of plaintiff's' two notes as found in No. 11 above.

"Third, that plaintiff's note for $191.83, dated May 24, 1922, due October 1, 1922, should next be paid out of any remaining moneys derived from the sale of said cotton, if any.

"Fourth,. that intervener's note for $200 dated October 11, 1920, due November 15; 1921, indorsed to him by Mrs. H. M. Ash, should next be paid out of the moneys remaining from the proceeds of said cotton, if any.

"The court further finds on his own motion that the mortgage given by the defendant in connection with the $220 note dated December 22, 1921, due October 10, 1922, as to all property therein mentioned, except the 20 acres of cotton referred to, should be foreclosed, the property sold, and the proceeds thereof applied to any balance remaining due to plaintiff.

"The court further finds that the costs should be paid in this case as follows:

"First, all costs occasioned by intervener's petition shall be paid by the intervener, and plaintiff and the officers of this court shall have execution therefor.

"Second, all other costs shall be paid by the defendant, L. J. Blackwell, and the plaintiff and officers of this court shall have executions therefor. That after the payment of all of said debts and costs any moneys remaining shall be paid to the defendant, L. J. Blackwell."

Based upon the foregoing findings, the court found that neither the appellee nor intervener had a prior lien on the four bales of cotton seized by the writ of attachment, but that the cotton should be sold under the writ of attachment, and the proceeds applied and marshaled among the parties. The decree was entered distributing the proceeds in accordance with the findings of the court.

The findings of the court and its conclusions of law are so involved as to make it difficult to make a clear statement thereof; but the decree makes a proper and fair distribution of the fund among the parties, in accordance with the court's finding, and the judgment will therefore not be disturbed.

The first assignment presents the question as to the jurisdiction of the court to hear and determine the case, because no value is alleged of the mortgaged property, and appellant cities in support of such contention People's Ice Co. v. Phariss (Tex. Civ. App.) 203 S. W. 66; Davis v. First Nat. Bank (Tex. Civ. App.) 248 S. W. 119; Smart v. Bank (Tex. Civ. App.) 249 S. W. 521.

The writer would feel constrained to follow those decisions had the suit not been for

an obligation itself within the jurisdiction of the court. The jurisdiction conferred upon county courts by section 16 of article 5 of the Constitution is:

"In all civil cases when the matter in controversy shall exceed in value $200.00, and not exceed $500.00, exclusive of interest."

Clearly, the amount sued for on the obligation was within the jurisdiction of the court, because the obligation sued upon did "exceed in value $200.00, and not exceed $500.00." The suit was not instituted alone to recover the value of specific property, for in such cases its value must be alleged; but the suit was on an obligation within the jurisdiction of the court, praying for a judgment for the specific amount sued for, and incidentally to foreclose the lien of the chattel mortgage given as security for the debt. No rule is more familiar than that the security is a·mere incident of the debt, and does not control the court's jurisdiction. Cantrell v. Cawyer (Tex. Civ. App.) 162 S. W. 919.

All the pleadings may be looked to, to determine the jurisdiction of the court. In this case the pleading of appellee, in describing the mortgaged property, stated its value to be $640, which we may construe as an allegation of value in the pleading.                 -

We do not think the court erred in refusing to dismiss this case on the ground that the value of the property was not alleged, and we overrule all the assignments urging that ground to justify a dismissal of the case.

It is true, however, as contended, that the intervener nowhere alleged the value of the property mortgaged, but that, for the reason stated, was not important, first, because the obligation upon which the judgment was sought with foreclosure was within the jurisdiction of the court, as shown, and, second, because the mortgage set out and described in appellee's pleading alleged the value of the property to be $640, and that contention of appellant is overruled.

From an examination of the entire record of this case, while the findings of the court and his conclusions are rather involved, awkwardly expressed and somewhat unusual, the facts support his ultimate findings, and he has thereby reached a conclusion where substantial justice has been fairly administered.

The writer has always believed, and does believe, that the security is a mere incident to the debt, and it does not, like the tail "wag the dog."

The writer would rather adopt the opinion of Mr. Justice Jenkins, in Cantrell v. Cawyer, supra.

My Associates do not agree with me in my views in regard to the jurisdiction of the court, that the amount of the obligation sued upon has any effect as fixing the jurisdiction of the court, where a foreclosure is sought upon property; that is, where a foreclosure of personal property is involved. They rather adhere to the holdings of the courts in Cotulla v. Goggan & Bros., 77 Tex. 33, 13 S. W. 742; Tex. & N. O. R. Co. v. Rucker, 38 Tex. Civ. App. 591, 88 S. W. 815; Marshall v. G. A. Stowers Furniture Co. (Tex. Civ. App.) 167 S. W. 230; Reeves v. Faris (Tex. Civ. App.) 186 S. W. 772; Hodgkinson v. Hartwell (Tex. Civ. App.) 226 S. W. 457. The last three opinions are by this court.

[1] My Associates agree with the disposition of this case in so far as the jurisdictional question is involved, because the value of the security in controversy does not exceed in value the jurisdiction of the court.

The many authorities, Supreme and appellate courts, that limit the jurisdiction of justice courts and county courts to the value of the mortgaged property, lay out of sight the value of the obligation sued upon as being of any value in determining the jurisdiction of such courts. In other words, such obligation would determine the jurisdiction of the courts, as fixed by the Constitution, were there no security to be foreclosed.

[2] The value of the obligation sued upon, should, on the face of the pleading, determine the court's jurisdiction, and if the value of the security exceed the value of the face of such obligation, to take it out of the jurisdiction of the court, that question should be made to appear by proper defensive pleading.

For the reasons stated, we shall not disturb the judgment.

All the assignments of error are therefore overruled, and the judgment is affirmed.